# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE INTUNIV ANTITRUST LITIGATION<br><br>This Document Relates to:<br>*All Indirect Purchaser Actions* | Civil Action No.  16-cv-12396-ADB |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on August ___, 2021 by and between plaintiffs Tina Picone, Carmen Richard, Shana Wright, and Sherry Cummisford, ("Plaintiffs" or Indirect Purchaser Plaintiffs "IPPs"), individually and on behalf of the Indirect Purchaser Settlement Class as defined below ("Indirect Purchaser Settlement Class"), by and through Ruben Honik of Honik Law P.C. and Conlee S. Whiteley of Kanner & Whiteley, LLC in their capacity as attorneys for the Plaintiffs and Class Counsel for the Indirect Purchaser Settlement Class in *In re Intuniv Antitrust Litigation*, C.A. No. 1:16-cv-12396-ADB (the "Action"), and defendants Shire LLC, and Shire U.S., Inc. ("Shire") by and through its undersigned counsel. This Settlement Agreement is intended to, and upon occurrence of the Effective Date will fully, finally, and forever resolve, compromise, discharge, and settle the claims of the Indirect Purchaser Settlement Class in this Action as to Shire, subject to the terms and conditions set forth herein. The Settlement Agreement resolves claims against Shire only, and does not resolve, compromise, discharge, or settle any of the claims of Plaintiffs or the Indirect Purchaser Settlement Class against defendants Actavis Elizabeth LLC and Actavis Holdco US, Inc. ("Actavis") which have been settled in a separate agreement.

## RECITATIONS

WHEREAS, on November 23, 2016, Ms. Picone filed a Class Action Complaint against Defendants, and then on March 10, 2017, with Ms. Cummisford, Ms. Richard, and Ms. Wright

filed a Consolidated and Amended Indirect Purchaser Plaintiffs' Class Action Complaint (the "IPPs' Complaint") on behalf of a class of consumers that purchased brand or generic extended release guanfacine hydrochloride sold under the brand name Intuniv indirectly from Shire and Actavis, alleging that Shire and Actavis engaged in a scheme in violation of state antitrust and consumer protection laws to unlawfully delay entry of generic substitutes for brand Intuniv thus imposing anticompetitive overcharges on members of the Indirect Purchaser Settlement Class;

WHEREAS, on October 20, 2017, the Court issued an order denying the defendants' motion to dismiss the IPPs' Complaint filed on behalf of the Indirect Purchaser Settlement Class. *See Tina Picone, et al., v. Shire*, C.A. No. 1:16-cv-12396-ADB, 2017 WL 4873506, at *1 (D. Mass. Oct. 20, 2017);

WHEREAS, on August 21, 2019, the Court issued an order on Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23 denying class certification. *See In re Intuniv Antitrust Litig.*, No. 1:16-CV-12396-ADB, 2019 WL 3947262, at *1 (D. Mass. Aug. 21, 2019), *reconsideration denied sub nom. In re Intuniv Antitrust Litig. (Indirect Purchasers)*, No. 1:16-CV-12396-ADB, 2019 WL 5789837 (D. Mass. Nov. 6, 2019);

WHEREAS, on September 10, 2020, the Court issued an order on the parties' motions to exclude certain expert testimony, granting the motions in part and denying them in part. *In re Intuniv Antitrust Litig. (Indirect Purchasers)*, No. 1:16-CV-12396-ADB, ECF 345 (D. Mass. Sept. 10, 2020);

WHEREAS, on September 21, 2020, the Court issued an order on the parties' motions for summary judgment, granting the motions in part and denying them in part. *In re Intuniv Antitrust Litig. (Indirect Purchasers)*, No. 1:16-CV-12396-ADB, ECF 338, 344 (D. Mass. Sept. 21, 2020);

WHEREAS, Shire denies each and every one of the allegations asserted in the current pending and prior complaints on behalf of the Indirect Purchaser Settlement Class, and has not conceded or admitted any liability, and has asserted a number of defenses to the claims on behalf of the Indirect Purchaser Settlement Class;

WHEREAS, Plaintiffs and Shire agree that neither this Settlement Agreement nor the settlement it embodies (the "Settlement") nor any actions taken in furtherance of either the Settlement Agreement or the Settlement shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Shire or of the truth of Plaintiffs' or the Indirect Purchaser Settlement Class's claims or allegations for purposes other than the Settlement;

WHEREAS, after substantial factual and expert discovery of the facts, including the claims asserted in the IPPs' Complaint, and the legal and factual defenses thereto asserted by Shire, Class Counsel believe that it would be in the best interests of the Indirect Purchaser Settlement Class to enter into this Settlement Agreement with Shire to avoid the uncertainties of continued litigation against Shire and to assure a benefit to the Indirect Purchaser Settlement Class;

WHEREAS, Counsel, on behalf of Plaintiffs and the Indirect Purchaser Settlement Class, and counsel for Shire, all of which are highly experienced in pharmaceutical antitrust litigation and settlement, engaged in arm's-length settlement negotiations and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Indirect Purchaser Settlement Class, and Shire;

WHEREAS, Class Counsel have concluded that the Settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and is in the best interests of the Indirect Purchaser Settlement Class;

WHEREAS, Shire has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement solely to avoid the uncertainties and additional costs of further litigation and to put to rest all claims asserted on behalf of the Indirect Purchaser Settlement Class in this Action;

WHEREAS, the Settlement resolves claims against Shire only, and does not resolve, compromise, discharge, or settle any of the claims of Plaintiffs or the Indirect Purchaser Settlement Class against Actavis.

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, and covenants contained herein, and intending to be legally bound hereby, it is agreed by the undersigned, on behalf of Plaintiffs and the Indirect Purchaser Settlement Class, and Shire, that this Action and all claims of the Plaintiffs and the Indirect Purchaser Settlement Class be settled, compromised, and dismissed with prejudice as to Shire, with each party bearing its own costs, subject to the approval of the Court, on the following terms and conditions:

1.    **Indirect Purchaser Settlement Class**.  The Indirect Purchaser Settlement Class, which Shire shall not challenge for purposes of this Settlement, is defined as:

> For the period beginning November 15, 2012, to the present, all persons in Alabama, Arizona, California, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia (A) who purchased brand or generic Intuniv in the United States for personal or household use, and who paid the purchase price themselves; and (B) all

4

persons covered by commercial health insurance who purchased brand Intuniv in the United States for personal or household use, and who paid some of the purchase price pursuant to a co-payment or co-insurance provision.

Excluded from the Class are: (1) third-party payors; (2) persons and entities who purchased directly from Defendants; (3) persons and entities who purchased only for resale purposes; (4) "flat co-pay" or "Cadillac Plan" customers who made purchases only via fixed dollar co-payments that do not vary between a branded pharmaceutical and a generic equivalent; (5) governmental entities; (6) Defendants, as well as their officers, directors, affiliates, legal representatives; and (7) the judge, justices, magistrates, or judicial officers presiding over this matter.

2.    **Reasonable Best Efforts to Effectuate This Settlement.**  Plaintiffs, Class Counsel, and Shire agree to promptly recommend approval of this Settlement to the Court and to undertake their reasonable best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to carry out the terms of this Settlement Agreement, and to secure the prompt, complete, and final dismissal with prejudice of claims in this Action against Shire.  This includes Shire serving notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

3.    **Motion for Preliminary Approval of the Settlement.**  As soon as is possible, and in no event later than 20 days after the date of this Settlement Agreement, Plaintiffs and the Indirect Purchaser Settlement Class shall submit to the Court, and Shire shall support, a motion seeking entry of an order preliminarily approving the Settlement.  The motion shall:

a.    Request preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Indirect Purchaser Settlement Class, pursuant to Fed. R. Civ. P. Rule 23 (the "Preliminary Approval Order");

b.      Request a stay of all proceedings in this Action on behalf of Plaintiffs and the against Shire, except those proceedings provided for or required by this Settlement Agreement;

c.      Recommend that notice to the Indirect Purchaser Settlement Class be promptly given; and

d.      Seek a schedule for a hearing by the Court after the notice period has expired to determine the fairness of the Settlement and Class Counsel's application for an award of attorney fees, reimbursement of expenses and service awards for the Class Representatives appointed by the Court.

**4.      Class Certification**.  Plaintiffs and Class Counsel shall seek Court approval of the certification of the Indirect Purchaser Settlement Class for purposes of the Settlement only, concurrently with their Motion for Preliminary Approval.  Shire will not oppose Class Counsel's motion for appointment as Interim Co-Lead Class Counsel or class certification in connection with the proposed Settlement.  Neither this Settlement Agreement nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Shire as to whether any other class may be certified for purposes of litigation and trial.  Further, if for any reason this Settlement Agreement should fail to become effective, Shire's agreement not to oppose certification of the Indirect Purchaser Settlement Class shall be null and void, and the parties shall return to their respective positions in the Action before this Agreement was executed.

6

Prior to issuance of the Preliminary Approval Order and until the date for members of the Indirect Purchaser Settlement Class to opt out, Shire (or any employee or agent or representative thereof, including any counsel) agrees to refrain from contacting or communicating with any putative member of the Indirect Purchaser Settlement Class (as defined in Paragraph 1) regarding the subject matter of this litigation or the settlement thereof absent agreement of Class Counsel for the Indirect Purchaser Settlement Class or permission of the Court.

     **5.**    <u>**Motion for Final Approval and Entry of Final Judgment.**</u>  If the Court preliminarily approves this Settlement, Plaintiffs and the Indirect Purchaser Settlement Class shall submit and Shire shall support a motion for final approval of this Settlement by the Court (the "Final Approval Motion"), after Notice has been disseminated to the Indirect Purchaser Settlement Class pursuant to the Preliminary Approval Order ("Shire's Cooperation").  The Final Approval Motion shall seek entry of an order and final judgment ("Final Approval Order") substantially in the form of **Exhibit C** hereto:

       a.     Finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiffs and the Indirect Purchaser Settlement Class within the meaning of Fed. R. Civ. P. 23 and directing its consummation pursuant to its terms;

       b.     Finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

       c.     Finding that the proposed Plan of Allocation, which allocates the Settlement Fund (net of Court-approved attorney fees, expenses, service awards and settlement administration costs) *pro rata* based on the number of tablets of brand and/or

generic Intuniv purchased during the relevant period (net of returns) by each member of the Indirect Purchaser Settlement Class, is fair and efficient.

      d.      Finding that all members of the Indirect Purchaser Settlement Class shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

      e.      Incorporating the releases set forth in Paragraphs 9 and 10, below, and forever barring the Releasors from asserting any Released Claims against any of the Releasees as defined below;

      f.      Providing for an award of reasonable attorneys' fees, reimbursement of expenses and service awards solely from the Settlement Fund;

      g.      Retaining exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement;

      h.      Directing that all claims by and on behalf of Plaintiffs and the Indirect Purchaser Settlement Class be dismissed with prejudice as to Shire and, except as provided for herein, with prejudice and without costs or attorney's fees recoverable under 15 U.S.C. § 15(a); and

      i.      Determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that all of the Indirect Purchaser Settlement Class claims in this Action as to Shire only shall be final and immediately appealable.

      **6.**      **Finality of Settlement.**  This Settlement Agreement and the Settlement shall become final upon the occurrence of all of the following (the "Effective Date"):

      a.      The Settlement and this Settlement Agreement are approved by the Court as required by Fed. R. Civ. P. 23(e);

b.     The Court enters an order finally approving the Settlement substantially in the form attached hereto as the Final Approval Order, entering a final judgment of dismissal with prejudice as to Shire against Plaintiffs and the Indirect Purchaser Settlement Class;

c.     The time for appeal from the Court's signing of the Final Approval Order has expired or, if the Final Approval Order is appealed, it has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken; and

d.     The Settlement is not terminated pursuant to Paragraph 13, below.

**7.     Settlement Payment.**  No later than 20 business days following execution of this Settlement Agreement and receipt of wiring instructions, Shire shall pay $1.85 million (the "Settlement Payment") to the designated account (the "Settlement Fund").  The Settlement Fund shall be held in escrow (the "Escrow Account"), subject to the terms and conditions of an escrow agreement in the form of **Exhibit D** hereto (the "Escrow Agreement") and executed simultaneously with execution of this Settlement Agreement.  In accordance with the provisions of Paragraph 8 below, the Settlement Payment shall be held in escrow pending finality of this Settlement Agreement pursuant to Paragraph 6, above.  The total consideration that Shire will pay for this Settlement shall be the Settlement Payment only.

**8.     The Settlement Fund.**

a.     Following issuance of the Preliminary Approval Order, but before the Court issues the Final Approval Order, disbursements for expenses associated with providing notice of the Settlement to the Class, expenses associated with administering the Settlement, and any payments and expenses incurred in connection with taxation

matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund.  In the event the Agreement is disapproved, terminated, or otherwise fails to become effective, the Settlement Fund shall be refunded to Shire plus interest earned (net of any taxes paid on such interest), minus half the actual costs of notice and claims administration.  Court approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the aggregate) of less than $50,000.  Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

b.      At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.  After the Effective Date, the Settlement Fund shall be invested as directed in writing by Class Counsel.  All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund. Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from Shire.  Shire shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

c.      After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. After making the Settlement Payment, Shire shall have no responsibility whatsoever for the allocation or

distribution of the Settlement Fund and shall not be responsible for disputes relating to
the amount, allocation, or distribution of any fees or expenses.  Further, after making the
Settlement Payment, Shire shall not be liable for any additional payments to the
Plaintiffs, Class Counsel, of the Indirect Purchaser Settlement Class pursuant to this
Settlement Agreement and the Settlement.

        d.      Shire shall have no right of reimbursement or repayment from the
Settlement Fund except as set forth in Paragraphs 8(a) and 13.

        e.      Plaintiffs and Class Counsel shall be reimbursed and indemnified solely
out of the Settlement Fund for all expenses.  Shire shall not be liable for any costs,
attorneys' fees, other fees, or expenses of any of Plaintiffs' or the Indirect Purchaser
Settlement Class's respective attorneys, experts, advisors, agents, or representatives, but
all such costs, fees, and expenses as approved by the Court shall be paid out of the
Settlement Fund.

        f.      To the extent that there is any ambiguity or inconsistency concerning
disbursements when this Settlement Agreement and the Escrow Agreement are read
together, the terms of this Settlement Agreement shall control.

        **9.**      **Releases**.  In consideration for the Settlement Payment and Shire's Cooperation
described in this Settlement Agreement, upon the occurrence of the Effective Date, Plaintiffs and
all members of the Indirect Purchaser Settlement Class (on behalf of themselves and their
respective past, present, and future trustees, insurers, agents, associates, attorneys, and any other
representatives thereof, and predecessors, heirs, executors, administrators, successors, and
assigns of each of the foregoing), on their own behalf and as assignee or representative of any
other entity or individual  (the "Plaintiff Releasors"), will dismiss Shire (and its past, present, and

11

future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or

limited partners, as well as their past, present, and future respective officers, directors,

employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof,

and the predecessors, heirs, executors, administrators, successors, and assigns of each of the

foregoing) (the "Shire Releasees") from this Action with prejudice, and release the Shire

Releasees from all claims, rights, debts, obligations, demands, actions, suits, causes of action,

liabilities, including costs, expenses, penalties, and attorneys' fees, or damages whenever

incurred, known or unknown, that were or could have been brought against Shire in this or any

other litigation relating to brand or generic Intuniv, or that arise out of or relate, in whole or in

part in any manner, to:

> (a) the subject matter of or acts, omissions, or other conduct
> alleged in the complaints in this Action, any prior complaints or
> subsequent amended complaints filed in this Action; (b) all claims
> concerning alleged delayed entry of generic versions of Intuniv
> (including any authorized generic) that could have been asserted in
> this Action; and/or (c) any and all claims alleging that any
> agreement between Actavis and Shire relating to brand and/or
> generic Intuniv resulted in the delayed entry of generic versions of
> generic Intuniv (including any authorized generic), (collectively,
> this entire paragraph, the "Released Claims").

Plaintiffs and the Indirect Purchaser Settlement Class hereby covenant and agree that, after the

Effective Date, each shall not sue or otherwise seek to establish or impose liability against the

Shire Releasees based, in whole or in part, on any of the Released Claims.  The Plaintiff

Releasors are releasing claims (upon final Court approval) only against the Shire Releasees.

Shire shall release Plaintiffs and the Indirect Purchaser Settlement Class from all claims,

regardless of legal theory, that would have been a compulsory counterclaim in this Action.  Shire

hereby covenants and agrees that, after the Effective Date, neither Shire nor any other Shire

Releasee shall sue or otherwise seek to establish or impose liability against any Plaintiff and/or

the Indirect Purchaser Settlement Class for any and all claims, regardless of legal theory, that

would have been a compulsory counterclaim in this Action.

      **10.**     **Additional Release.** In addition, upon the Effective Date, Plaintiffs and each

member of the Indirect Purchaser Settlement Class hereby expressly waives and releases any and

all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> **SECTION 1542. <u>GENERAL RELEASE–CLAIMS
> EXTINGUISHED</u>. A GENERAL RELEASE DOES NOT
> EXTEND TO CLAIMS WHICH THE CREDITOR DOES
> NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE,
> WHICH IF KNOWN BY HIM OR HER MUST HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR.**

Upon the Effective Date, Plaintiffs and each member of the Indirect Purchaser Settlement Class

also hereby expressly waives and releases any and all provisions, rights, and benefits conferred

by any law of any state or territory of the United States or other jurisdiction, or principle of

common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

Plaintiffs and each member of the Indirect Purchaser Settlement Class may hereafter discover

facts other than or different from those that it knows or believes to be true with respect to the

claims that are the subject of this Paragraph, but Plaintiffs and each member of the Indirect

Purchaser Settlement Class hereby agree that as of the Effective Date, they expressly waive and

fully, finally, and forever settle and release, as to the Shire Releasees only, any known or

unknown, suspected or unsuspected, accrued or unaccrued, contingent or non-contingent claim

that would otherwise fall within the definition of Released Claims, whether or not concealed or

hidden, without regard to the subsequent discovery or existence of such different or additional

facts. For the avoidance of doubt, Plaintiffs and each member of the Indirect Purchaser

Settlement Class also hereby agrees that as of the Effective Date, they  expressly waive and fully,

finally, and forever settle and release any and all claims that would otherwise fall within the definition of Released Claims they may have against any of the Shire Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable, or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

11.      **Full Satisfaction; Limitation of Interest and Liability.**  Members of the Indirect Purchaser Settlement Class shall look solely to the Settlement Fund for settlement and satisfaction against Shire of all claims that are released hereunder.  Except as provided by order of the Court, no member of the Indirect Purchaser Settlement Class shall have any interest in the Settlement Fund or any portion thereof.  Plaintiffs and Class Counsel or any other counsel acting on Plaintiffs' behalf, will be paid solely out of the Settlement Fund for any costs and expenses relating to this Action.

12.      **Attorneys' Fees, Service Awards, and Costs.**

a.      Class Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of up to one-third of the Settlement Fund (including interest accrued thereon but net of any reasonable costs and expenses incurred prior to Settlement), reimbursement of reasonable litigation expenses incurred in the prosecution of the Action, service awards for each named plaintiff, and payment for costs of Administration Expenses of the Settlement Fund.  Plaintiffs' Counsel shall file a motion for approval of the fee, expense and service award ("Motion for Fee, Expense and Service Awards") after the Court has granted preliminary approval to the Settlement but sufficiently before the Court's final fairness hearing on the Settlement, and Shire agrees to take no position with respect to the

14

Motion for Fee and Expense Award, or on any other application by Class Counsel for fees or expenses to be paid only from the Settlement Fund as may be necessary to effectuate this Settlement Agreement.  Class Counsel shall be paid solely out of the Settlement Fund for all such fees and expenses.  Plaintiffs, Class Members, and their respective counsel, shall not seek payment of any attorneys' fees, costs, or any other expense, fee, or payment of any kind from Shire in this Action, or in any other action related to the released claims set forth above, from any source other than the Settlement Fund.

b.      The procedures for and the allowance or disallowance by the Court of the application by Plaintiffs' Counsel for attorneys' fees, costs, expenses, and service awards to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the fee, expense, and service award application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or provide a basis to terminate or cancel this Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award.

c.      If the Court's award of such fees, expenses, or service awards is vacated, reversed, or reduced subsequent to the disbursement of any fee, expense award or service award, Class Counsel shall within 10 business days after receiving written notice from the Court or Shire of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction with interest; and further, if the Settlement Agreement is terminated pursuant to Paragraph 13 below, Class Counsel

shall within 10 business days after giving notice to or receiving notice from Shire of such termination, make a refund to the Escrow Account in the amount of any such Fee and Expense Award with interest. The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the disbursement of any fee, expense or service award and any refund required by this Paragraph.

13. **Termination.** Shire and Plaintiffs shall each have the option to terminate the Settlement and have the Settlement Payment refunded to Shire if any of the following occurs: (a) the Court declines to grant final approval to the Settlement, or (b) a mutually agreed upon percentage of the proposed Indirect Purchaser Settlement Class opts out of the Settlement. The agreed upon opt-out percentage trigger is specified in a confidential supplemental agreement to be filed under seal attached hereto as **Exhibit E**. If for any reason the Settlement does not become final in accordance with the terms of this Settlement Agreement, then (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid by Shire into the Settlement Fund, plus interest (net of any taxes paid on such interest), minus half the actual costs of notice and claims administration, shall be returned to Shire as soon as practicable after the Escrow Agent receives notice of termination; (iii) any release pursuant to Paragraphs 9 and 10 above shall be of no force or effect; and (iv) that litigation of this Action will resume in a reasonable manner and on a reasonable timetable to be approved by the Court.

14. **Taxes Paid by Settlement Fund.**

    a.    The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Class Counsel shall be solely responsible for directing the Claim Administrator to file all informational and other tax

16

returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.  Further, Class Counsel shall be solely responsible for directing the Claim Administrator to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund.  Class Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities.  Shire shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to Shire.  Other than as specifically set forth herein, Shire shall have no responsibility for the payment of taxes or tax-related expenses.  If, for any reason, for any period of time, Shire is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Shire with notice to Class Counsel, timely pay to Shire sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

      b.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claim Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

c.       The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.  The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts in this manner.  In addition, the Escrow Agent and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Accounts being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B.

**15.**       **Binding Effect.**  This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto and to the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and Class Counsel shall be binding upon all Indirect Purchaser Settlement Class Members.

**16.**       **Integrated Agreement.**  This Settlement Agreement, together with exhibits hereto and the documents incorporated herein by reference, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties hereto with respect to the transactions contemplated by this Settlement Agreement, and

supersedes all prior agreements or understandings, whether written or oral, between or among any of the parties hereto with respect to the subject matter hereof. This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the signatories hereto.

**17.      Independent Settlement.** This Settlement is not conditioned on approval by any other member of the Indirect Purchaser Settlement Class or settlement of any other case. Notwithstanding this term, Shire acknowledges that this Settlement is one part of a global settlement of all claims on behalf of the Indirect Purchaser Settlement Class and Shire will cooperate fully in the coordination of those efforts in order to achieve final settlement on an efficient and timely basis.

**18.      Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

**19.      No Party is the Drafter.** None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

**20.      Intended Beneficiaries.** No provision of this Settlement Agreement will provide any rights to, or be enforceable by, any person or entity that is not a Plaintiff, Class Counsel, Shire, or a Shire Releasee. Actavis shall have no rights under this Settlement Agreement and cannot enforce its terms. Neither Plaintiffs nor Class Counsel may assign or otherwise convey any right to enforce or dispute any provision of this Settlement Agreement.

**21.      Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to New York law.

22.     **Consent to Jurisdiction.**  Shire and each Indirect Purchaser Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Massachusetts for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.  Nothing in this paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

23.     **Representations and Warranties.**  The signatories hereto represent and warrant that they each have the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

24.     **No Admission.**  Nothing in this Settlement Agreement, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Shire, including, without limitation, that Shire engaged in any conduct or practices that violate any antitrust statute or other law.

25.     **Notice.**  Notice to Shire pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

Fred A. Kelly, Jr.
Haug Partners LLP
One Post Office Square, 31st Floor
Boston, MA 02109
Email: FKelly@haugpartners.com

Notice to the Plaintiffs or Class Counsel pursuant to this Settlement Agreement shall be

sent by United States mail and electronic mail to Class Counsel:

Conlee S. Whiteley
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
Email: c.whiteley@kanner-law.com

26.     **Execution in Counterparts.**  This Settlement Agreement may be executed in

counterparts.  Signatures transmitted by electronic means shall be considered valid signatures as

of the date signed.

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement as of the date first herein above

written.

_____
Ruben Honik
Honik Law P.C.
1515 Market St., Suite 1100
Philadelphia, PA 19102
Tel: (267) 435-1300
rhonik@honiklaw.com

_____
Conlee S. Whiteley,
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
c.whiteley@kanner-law.com

*Attorneys for Plaintiffs and Class Counsel*

_____
J. Christopher Allen
Vice President, Head Counsel, US Litigation
& Investigations
Takeda Pharmaceuticals U.S.A., Inc.

*Attorney for Defendants Shire LLC, and*
*Shire U.S., Inc.*

Dated: August 9 , 2021

21

*for the Indirect Purchaser Settlement Class*

Dated: August 9, 2021

# EXHIBITS A-B

Intentionally left blank

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re INTUNIV ANTITRUST | ) | |
| LITIGATION | ) | Lead Case No. 1:16-cv-12396-ADB |
| | ) | |
| This Document Relates to *All Indirect* | ) | |
| *Purchaser Actions* | ) | |
| | ) | |

**[PROPOSED] FINAL APPROVAL ORDER OF PLAINTIFFS' SETTLEMENT WITH
DEFENDANT ACTAVIS AND SHIRE, AND ORDER GRANTING FINAL JUDGMENT**

Pursuant to Fed. R. Civ. P. 23(e) and in accordance with the terms of the Settlement Agreement dated May 10, 2021 between plaintiffs, Tina Picone, Carmen Richard, Shana Wright, and Sherry Cummisford ("Plaintiffs") individually and on behalf of the Indirect Purchaser Class as defined below ("Indirect Purchaser Class") and defendant Actavis Elizabeth LLC, Actavis LLC, and Actavis Holdco US, Inc. ("Actavis") and Shire U.S., Inc. and Shire, LLC ("Shire"), it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      This Final Judgment and Order of Dismissal hereby incorporates by reference the definitions in the Settlement Agreement between Plaintiffs, Actavis and Shire. All capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.      On _____, the Court issued an order on Indirect Purchasers' motion for preliminary approval certifying provisionally the following Indirect Purchaser Class:

For the period beginning November 15, 2012, to the present, all persons in Alabama, Arizona, California, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of

1

Columbia (A) who purchased brand or generic Intuniv in the United States for personal or household use, and who paid the purchase price themselves; and (B) all persons covered by commercial health insurance who purchased brand Intuniv in the United States for personal or household use, and who paid some of the purchase price pursuant to a co-payment or co-insurance provision.

Excluded from the Class are: (1) third-party payors; (2) persons and entities who purchased directly from Defendants; (3) persons and entities who purchased only for resale purposes; (4) "flat co-pay" or "Cadillac Plan" customers who made purchases only via fixed dollar co-payments that do not vary between a branded pharmaceutical and a generic equivalent; (5) governmental entities; (6) Defendants, as well as their officers, directors, affiliates, legal representatives; and (7) the judge, justices, magistrates, or judicial officers presiding over this matter.

3.     In the same order, the Court appointed Conlee S. Whiteley and Ruben Honik as Lead Counsel for the Indirect Purchaser Class for settlement purposes.

4.     Plaintiffs and Lead Counsel, along with additional counsel for Plaintiffs and the Class ("Class Counsel"), have fairly and adequately represented the interests of the Indirect Purchaser Class and satisfied the requirements of Fed. R. Civ. P. 23(g).

3.     The Court has jurisdiction over these actions, each of the parties, and all members of the Indirect Purchaser Class for all manifestations of this case, including this Settlement.

4.     The Notice of Settlement (substantially in the form previously presented to this Court as Exhibit _ to the Motion to Approve Proposed Notice Plan (the "Notice") provided to the members of the Indirect Purchaser Class via publication, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided to members of the Indirect Purchaser Class is sufficient to meet the standards of due process. Pursuant to, and in accordance with, Fed. R. Civ. P. 23, the Court hereby finds that the Notice provided to members of the Indirect Purchaser Class constitutes due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Indirect

Purchaser Class members to object to the Settlement.

6.      Due and adequate notice of the proceedings having been given to the Indirect Purchaser Class members and a full opportunity having been offered to them to participate in the _____, 2021 Fairness Hearing, it is hereby determined that all Indirect Purchaser Class members are bound by this Order and Final Judgment.

7.      The Settlement of this Action was not the product of collusion between the Plaintiffs and Actavis and/or Shire or their respective counsel, but rather was the result of *bona fide* and extensive arm's-length negotiations conducted in good faith between Lead Counsel and counsel for Actavis and Shire.

8.      Pursuant to Fed. R. Civ. P. 23, the Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate to Indirect Purchaser Class members and in their best interests. Accordingly, the Settlement shall be consummated in accordance with the terms of the Settlement Agreement.

9.      The Court hereby approves the prior filed Plan of Allocation of the Settlement Fund as proposed by Class Counsel allocating settlement funds on a pro rata basis, and directs _____, the firm retained by Class Counsel as the Claims Administrator, to distribute the net Settlement Fund as provided in the Plan of Allocation.

10.     All claims against Actavis and Shire in *In re Intuniv Antitrust Litigation*, C.A. No. 1:16-cv- 12653-ADB (the "Action"), are hereby dismissed with prejudice, and without costs (other than as provided herein).

11.     Upon the Settlement Agreement becoming final in accordance with the Settlement Agreement, Plaintiffs and all members of the Indirect Purchaser Class (on behalf of themselves and their respective past, present, and future parents, subsidiaries, divisions,

affiliates, joint ventures, stockholders, and general or limited partners, as well as their past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing), on their own behalf and as assignee or representative of any other entity, release Actavis and Shire (and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as their past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing) (the "Actavis and Shire Releasees") from all claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, known or unknown, liabilities, including costs, expenses, penalties, and attorneys' fees, that were or could have been brought against Actavis and/or Shire in this litigation relating to brand or generic Intuniv, or that arise out of or relate, in whole or in part in any manner, to:

> (a) the subject matter of or acts, omissions, or other conduct alleged in the complaints in this Action, any prior complaints or subsequent amended complaints filed in this Action; (b) all claims concerning alleged delayed entry of generic versions of Intuniv (including any authorized generic) that could have been asserted in this Action; and/or (c) any and all claims alleging that any agreement between Actavis and Shire relating to brand and/or generic Intuniv resulted in the delayed entry of generic versions of generic Intuniv (including any authorized generic), (collectively, this entire paragraph the "Released Claims").

Accordingly, Plaintiffs and the Indirect Purchaser Class shall not sue or otherwise seek to establish or impose liability against the Actavis and Shire Releasees based, in whole or in part, on any of the Released Claims.

4

12.     In addition, Plaintiffs and each member of the Indirect Purchaser Class expressly waive and release any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General release–claims extinguished</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and each member of the Indirect Purchaser Class also expressly waive and release any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Plaintiffs and each member of the Indirect Purchaser Class may hereafter discover facts other than or different from those that they know or believe to be true with respect to the claims that are the subject of this Paragraph, but Plaintiffs and each member of the Indirect Purchaser Class expressly waive and fully, finally, and forever settle and release as to the Actavis and Shire Releasees only any known or unknown, suspected or unsuspected, accrued or unaccrued, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. For the avoidance of doubt, Plaintiffs and each member of the Indirect Purchaser Class also expressly waive and fully, finally, and forever settle and release any and all claims that would otherwise fall within the definition of Released Claims they may have against any of the Actavis and Shire Releasees under § 17200, *et seq*., of the California Business and Professions Code or any similar, comparable, or equivalent provision of the law of any other state or territory of the United States

or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

13.    As set forth in the Settlement Agreement, notwithstanding the foregoing, Released Claims shall not include any claims arising in the ordinary course of business between Plaintiffs and/or member(s) of the Indirect Purchaser Class and the Released Parties concerning Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of negligence, product liability or implied warranty, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any of the Released Claims), or personal or bodily injury. No party other than the Actavis and Shire Releasees is intended to be, or is, included within the scope of the release contained herein.

14.    Upon the Settlement Agreement becoming final in accordance with the Settlement Agreement, Actavis and Shire release Plaintiffs and the Class from all claims, regardless of legal theory, that would have been a compulsory counterclaim in this Action. Neither Actavis, Shire nor any other Actavis or Shire Releasee shall sue or otherwise seek to establish or impose liability against any Plaintiffs and/or the Indirect Purchaser Class for any and all claims, regardless of legal theory, that would have been a compulsory counterclaim in this Action.

15.    Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses. Class Counsel request an award of attorneys' fees of_____% of the Settlement amount (including the interest accrued thereon) and reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $__. Such motion has been on the docket and otherwise publicly available since_____, 20 .

16.    Upon consideration of Class Counsel's petition for fees, costs and expenses,

Class Counsel are hereby awarded attorneys' fees totaling_____(representing

_____% of the Settlement Fund) and costs and expenses totaling

_____, together with a proportionate share of the interest thereon from the date the funds are

deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and

expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund

and only if and after the Settlement becomes final in accordance with Paragraphs 5 and 6 of the

Settlement Agreement.

17.     Lead Counsel, Conlee Whiteley and Ruben Honik, shall allocate and distribute

such attorneys' fees and expenses among the various Class Counsel which have participated in

this litigation.  The Releasees shall have no responsibility for, and no liability whatsoever with

respect to, any payment or disbursement of attorneys' fees and expenses among Class Counsel

nor with respect to any allocation of attorneys' fees or expense to any other person or entity

who may assert any claim thereto. The attorneys' fees and expenses authorized and approved

by this Final Judgment and Order shall be paid to Kanner & Whiteley, L.L.C. within five days

after this Settlement becomes final pursuant to Paragraph 5 of the Settlement Agreement or as

soon thereafter as is practical and in accordance with the terms of the Settlement Agreement

and the Escrow Agreement. The attorneys' fees and expenses authorized and approved by this

Final Judgment and Order shall constitute full and final satisfaction of any and all claims that

Plaintiffs and any Indirect Purchaser Class member, and their respective counsel, may have or

assert for reimbursement of fees, costs, and expenses, and incentive awards against Actavis or

Shire, and Plaintiffs and members of the Indirect Purchaser Class, and their respective counsel,

shall not seek or demand payment of any fees and/or costs and/or expenses and/or incentive

awards from Actavis or Shire other than from the Settlement Fund.

18.     The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement, and over this Final Judgment and Order.

19.     The Court finds that this Final Judgment and Order adjudicates all of the claims, rights and liabilities of the parties to the Settlement Agreement (including the members of the Class), and is final and shall be immediately appealable. Neither this Order nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence, admission, or concession by Actavis, Shire or any other Releasee, in this or any other matter or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, nor shall either the Settlement Agreement, this Order, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Order, or if offered by any Releasee in responding to any action purporting to assert Released Claims, or if offered by any Releasor in asserting that a claim is not a Released Claim, including because such claim is covered by the Settlement Agreement.

SO ORDERED this_____day of_____, 2021

_____
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

EXHIBIT D

## ESCROW AGREEMENT

This Escrow Agreement dated August 6, 2021, is made among Conlee S. Whiteley of Kanner & Whiteley, LLC ("Settlement Class Counsel"), Fred A. Kelly, Jr. and Michael F. Brockmeyer, Haug Partners L.L.P. ("Defense Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as escrow agent ("Escrow Agent").

### Recitals

A.      This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulation of Settlement (the "Settlement Agreement") dated August 6, 2021 attached hereto as Exhibit A, entered into by, among others, Settlement Class Counsel on behalf of the plaintiffs Tina Picone, Carmen Richard, Shana Wright, and Sherry Cummisford, ("Plaintiffs") and Defense Counsel on behalf of the defendant Shire LLC and Shire U.S., Inc. ("Shire" or "Defendant"), will be paid to settle the class action captioned *In re Intuniv Antitrust Litigation*, C.A. No. 1:16-cv-12396-ADB (the "Action"), pending in the United States District Court for the District of Massachusetts.

B.      Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause to be paid hereto the total amount of $1.85 million in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Action and has agreed that this amount will be paid into the Escrow Account previously established at Huntington Bank pursuant to the Settlement Agreement with Actavis Elizabeth LLC and Actavis Holdco US, Inc ("Actavis") bearing the account number #1087262358.

C.      The Settlement Amount, together with any interest accrued thereon, is to be deposited into escrow and used to satisfy payments to Authorized Claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### Agreement

1.      <u>Appointment of Escrow Agent</u>. The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      <u>The Escrow Account</u>. The Escrow Agent shall establish and maintain an escrow account titled as "Intuniv Actavis and Shire Qualified Settlement Fund" (the "Escrow Account"). Pursuant to the Settlement Agreement, the Defendant shall cause the Settlement Amount to be deposited into the Escrow Account within 20 business days following entry of the Court's order preliminarily approving the settlement. Escrow Agent shall receive the Settlement Amount into the Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and

subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3.    Investment of Settlement Fund.    At the written direction of Settlement Class Counsel, Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment, disbursement, or other oversight of the Settlement Fund by the Escrow Agent.

4.    Escrow Funds Subject to Jurisdiction of the Court.    The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.    Tax Treatment & Report.    The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Settlement Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.    For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Settlement Class Counsel. Settlement Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Settlement Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.    Tax Payments of Settlement Fund.    All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Settlement Class Counsel. Settlement Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.  The Settlement Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Escrow Agent at Settlement Class Counsel's direction. The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Escrow Agent, as directed by Settlement Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the

2

Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Escrow Agent with a properly completed Form W-9.

     7.    <u>Disbursement Instructions</u>

         (a)    Settlement Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses up to an aggregate amount of $50,000.

         (b)    Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of Conlee S. Whiteley, Settlement Class Counsel and Fred A. Kelly, Jr., Defense Counsel.

         (c)    In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Escrow Agent may record such call backs. If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent. Settlement Class Counsel and Defense Counsel agree to notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

         (d)    The Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Escrow Agent, including, without limitation, the risk of the Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Escrow Agent; and (iii) that the security procedures (if any) to be

3

followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.    Termination of Settlement.  If the Settlement Agreement terminates in accordance with its terms, Settlement Class Counsel and Defense Counsel shall jointly notify Escrow Agent of the termination of the Settlement Agreement.  Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Settlement Class Counsel and Defense Counsel, shall be returned to the Defendant in accordance with instruction from Defense Counsel.

9.    Fees.  The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of Escrow Agent shall be paid solely from the Settlement Fund.  The Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Settlement Class Counsel. If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.    Duties, Liabilities and Rights of Escrow Agent.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

(a)    Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Settlement Class Counsel or Counsel for the Defendant, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)    Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Escrow Account only (i) upon approval by Settlement Class Counsel and the Defendant or (ii) pursuant to an order of the Court.

(c)    The Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)    Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

4

(e)     Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement.  The Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's material breach of this Escrow Agreement, bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Escrow Agent a party to same.

11.     <u>Non-Assignability by Escrow Agent</u>.  Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Settlement Class Counsel and the Defendant.

12.     <u>Resignation of Escrow Agent</u>.  Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.  On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement. If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

13.     <u>Notices</u>.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

5

| If to Settlement Class Counsel: | Conlee S. Whiteley<br>Kanner & Whiteley, LLC<br>701 Camp Street<br>New Orleans, LA 70130<br>Tel: (504) 524-5777<br>c.whiteley@kanner-law.com |
|---|---|
| If to Defense Counsel: | Fred A. Kelly, Jr.<br>Joshua Barlow<br>Haug Partners LLP<br>One Post Office Square, 31st Floor<br>Boston, MA 02109<br>FKelly@haugpartners.com |
| If to Escrow Agent: | THE HUNTINGTON NATIONAL BANK<br>Liz Lambert, Senior Managing Director<br>1150 First Avenue, Suite 501<br>King of Prussia, PA  19406<br>Telephone:  (215)568-2382<br>E-mail:  liz.lambert@huntington.com<br>a)     Susan Brizendine, Trust Officer<br>b)     Huntington National Bank<br>c)     7 Easton Oval – EA5W63<br>d)     Columbus, Ohio 43219<br>e)     Telephone:  (614) 331-9804<br>f)      E-mail:  susan.brizendine@huntington.com |

14.     <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

15.     <u>Entire Agreement</u>.  This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.     <u>Governing Law</u>.  This Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection

with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     <u>Termination of Escrow Account</u>.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

18.     <u>Miscellaneous Provisions</u>.

(a)     <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b)     <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c)     <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
     Liz Lambert, Senior Managing Director

Settlement Class Counsel

By: _____

Conlee S. Whiteley
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
c.whiteley@kanner-law.com


Defense Counsel

By: _____

Fred A. Kelly, Jr.
Haug Partners LLP
One Post Office Square, 31st Floor
Boston, MA 02109
Tel:  (617) 426-6800
FKelly@haugpartners.com

8

**Exhibit A**

**Settlement Agreement**

**Exhibit B**

**Fees of Escrow Agent**

**Acceptance Fee:**                                                      **Waived**

The Acceptance Fee includes the review of the Escrow Agreement,
acceptance of the role as Escrow Agent, establishment of Escrow
Account(s), and receipt of funds.

**Annual Administration Fee:**                                           **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Escrow Account
including daily account management, generation of account
statements to appropriate parties, and disbursement of funds in
accordance with the Escrow Agreement.  Administration Fees are
payable annually in advance without proration for partial years.

**Out of Pocket Expenses:**                                              **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.

# EXHIBIT E

Filed Under Seal