# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE INTUNIV ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*All Indirect Purchaser Actions* | Civil Action No.  16-cv-12396-ADB |

**DECLARATION OF CARLA A. PEAK REGARDING SETTLEMENT NOTICE PLAN**

I, Carla A. Peak, declare as follows:

1. My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2. I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3. I am the Vice President of Legal Notification Services for KCC Class Action Services, LLC ("KCC"), a firm that provides comprehensive class action services, including claims administration, legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. Our experience includes many of the largest and most complex settlement administrations of both private litigation and of actions brought by state and federal government regulators. KCC has been retained to administer more than 7,000 class actions and distributed settlement payments totaling well over a trillion dollars in assets.

4.      This Declaration describes KCC's experience, as well as the proposed notice plan (the "Notice Plan" or "Notice Program") designed to provide notice to class members for this class action settlement.

## RELEVANT EXPERIENCE

5.      KCC has administered class action settlements for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Further, KCC has been retained as the administrator in a variety of antitrust matters. Some antitrust case examples which KCC has been involved with include: *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.); *In re Thalomid and Revlimid Antitrust Litigation*, No. 2:14-cv-06997 (D. N.J.); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 1:14-md-02503 (D. Mass.); *In re Hypodermic Products Antitrust Litigation*, MDL No. 1730 (D. N.J.); *In re Lidoderm Antitrust Litigation*, No. 3:14-md-02521 (N.D. Cal.); *In re Asacol Antitrust Litigation*, No. 1:15-cv-12730 (D. Mass.); and *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprises Insurance Co.*, No. 2:09-CV-00852 (E.D. Wis.); and *Barba v. Shire U.S., Inc.*, No. 1:13-cv-21158 (S.D. Fla.).

## NOTICE PLAN OVERVIEW

6.      The proposed Notice Program utilizes paid notice in a consumer magazine and on a variety of websites and social media platforms to effectively reach the Class. The Notice Program is expected to reach approximately 70% of likely Settlement Class Members.[1] Though not measurable, the Notice Program will be further supplemented by paid notice on a targeted website and e-newsletter.

7.      The expected reach of the Notice Program is consistent with other effective court-approved settlement notice programs and is designed to meet due process requirements. The Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain

---

[1] The reach or net reach of a notice program is defined as the percentage of a class that was exposed to a notice net of any duplication among people who may have been exposed more than once.

Language Guide (the "FJC Checklist") considers 70-95% reach among class members to be a "high percentage" and reasonable.

## NOTICE PROGRAM DETAILS

### *Class Definition*

8. The Settlement Class is defined as all persons in Alabama, Arizona, California, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia (A) who purchased brand or generic Intuniv in the United States for personal or household use, and who paid the purchase price themselves; and (B) all persons covered by commercial health insurance who purchased brand Intuniv in the United States for personal or household use, and who paid some of the purchase price pursuant to a co-payment or co-insurance provision from November 15, 2012, to the present.

9. Specifically excluded from the Settlement Class are: (1) third-party payors; (2) persons and entities who purchased directly from Defendants; (3) persons and entities who purchased only for resale purposes; (4) "flat co-pay" or "Cadillac Plan" customers who made purchases only via fixed dollar co-payments that do not vary between a branded pharmaceutical and a generic equivalent; (5) governmental entities; (6) Defendants, as well as their officers, directors, affiliates, legal representatives; and (7) the judge, justices, magistrates, or judicial officers presiding over this matter.

### *Media Campaign*

10. KCC will cause the Summary Notice to appear as a one-third page ad unit once in the national edition of *People* magazine. *People* offers an average circulation of 3,502,833, an adult audience of 31,779,000, and reaches 16.5% of likely Settlement Class Members. The Summary Notice will appear in the print edition as well as its online digital replica.

11. Over 168.8 million digital media impressions will be purchased programmatically and distributed over various websites and on the social media platform Facebook. Targeting will

be layered to include multiple strategies, such as demographics and interests, to effectively reach likely Settlement Class Members nationwide. The digital notices will appear on both desktop and mobile devices, including tablets and smartphones, in display and native ad formats. All digital media notices will include an embedded link to the case website.

12. The digital media campaign will be routinely monitored by KCC's digital specialists to analyze key campaign performance indicators (KPIs), such as click-through rates (CTRs) and costs per action (CPAs). This knowledge will be leveraged to allocate placements to sites that have demonstrated successful KPIs throughout the duration of the campaign.

13. In addition, KCC will cause the notice to appear for one month on ADDitudemag.com and once in the *ADDitude* weekly e-newsletter. *ADDitude* is the premier media network dedicated to providing information and solutions for families and individuals impacted by attention deficit and learning differences. ADDitudemag.com has approximately 2.4 million users per month while the *ADDitude* weekly e-newsletter has approximately 219,000 subscribers.

### *Settlement Website*

14. KCC will establish and maintain a case-specific website to allow Settlement Class Members to obtain additional information and documents about the Settlement. The Settlement Website will allow users to read, download, and print the Settlement Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form, as well as other important documents and deadlines. Settlement Class Members will also be able to review a list of Frequently Asked Questions and Answers and file a Claim Form online. The website address will be displayed in the Summary Notice and be accessible through a hyperlink embedded in the digital notices.

### *Toll-Free Telephone Number*

15. KCC will establish and host a case-specific toll-free number to allow Settlement Class Members to learn more about the settlement in the form of pre-recorded answers to frequently-asked questions. It will also allow Settlement Class Members to request to have a Long Form Notice and Claim Form mailed directly to them.

*Settlement Mailbox*

16.     KCC will establish and monitor a settlement mailbox where Settlement Class Members may submit hard copy Claim Forms and other case correspondence.

## CONCLUSION

17.     The Notice Plan is expected to reach approximately 70% of likely Settlement Class Members on average 2.1 times each. The reach and frequency of this Notice Plan is similar to the reach and frequency achieved in the *Barba v. Shire U.S., Inc.* class action settlement which focused on a comparable target audience.

18.     The proposed Notice Plan is consistent with other settlement notice programs and meets the due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). It provides the same reach and frequency evidence that courts have approved and that has withstood appellate scrutiny, other expert critiques, as well as collateral review. The Notice Plan is consistent with the guidelines set forth in Fed. R. Civ. P. 23(c)(2)(B), the *Manual for Complex Litigation, Fourth*, and the FJC Checklist.

I, Carla A. Peak, declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of August 2021, at Sellersville, Pennsylvania.

_Carla Peak_
Carla A. Peak