**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re INTUNIV ANTITRUST LITIGATION<br><br>This Document Relates to *All Indirect Purchaser Actions* | ) | Lead Case No. 1:16-cv-12396-ADB |

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

II. BACKGROUND ........................................................ 2

III. ARGUMENT ........................................................ 3

A. Class Counsel's Attorneys' Fees and Litigation Costs Are Reasonable .................. 3

1. Class Counsel's Litigation Costs Are Reasonable ........................................ 4

2. A Percentage of the Fund Is the Prevailing Method For Attorneys' Fees ........................................................ 5

3. A Percentage of the Fund of Twenty-Five Percent Is Reasonable .............. 5

4. A Lodestar Cross-Check Underscores the Reasonableness of a Twenty- Five Percent Fee ........................................................ 8

5. Class Representatives' Service Awards ........................................ 9

IV. CONCLUSION ........................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) .......... 9

*Bussie v. Allmerica Fin. Corp.*,
No. 97-cv-40204, 1999 WL 342042 (D. Mass. May 19, 1999) .......... 5

*Gunther v. Ridgewood Energy Corp.*,
209 F.3d 43 (3d Cir. 2000) .......... 6

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972) .......... 3

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730, 2017 WL 11475275 (D. Mass Dec. 7, 2017) .......... 5, 6

*In re Cabletron Sys., Inc. Sec. Litig.*,
239 F.R.D. 30 (D.N.H. 2006) .......... 5

*In re Celexa & Lexapro Marketing & Sales Pracs. Litig.*,
MDL No. 09-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .......... 9

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) .......... 4

*In re Loestrin Antitrust Litig.*,
No. 13-md-2472, 2020 WL 5203323 (D.R.I. Sept. 1, 2020) .......... 6

*In re Lupron Marketing & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .......... 9

*In re Nexium (Esomeprazole) Antitrust Litig.*,
842 F.3d 34 (1st Cir. 2016) .......... 7

*In re Prograf Antitrust Litig.*,
No. 11-md-2242 (D. Mass. May 20, 2015) .......... 5, 6

*In re Puerto Rico Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) .......... 8

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .......... 6

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
111 F.3d 220 (1st Cir. 1997) .......... 4

*In re Solodyn Antitrust Litig.*,
No. 14-md-2503, 2018 WL 7075881 (D. Mass. July 18, 2018) ........................................ 5, 6, 8

*In re Thirteen Appeals – San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) ........................................................................................ 4, 5

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................................... 4

*In re Wellbutrin XL Antitrust Litig.*,
133 F. Supp. 3d 734 (E.D. Pa. 2015) .............................................................................. 7

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
No. 05-cv-11148, 2009 WL 3418628 (D. Mass. Oct. 20, 2009) ............................................... 8

*The Pillsbury Co. v. Conboy*,
459 U.S. 248 (1983) ..................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23(h) ..................................................................................................... 3

Plaintiffs Tina Picone, Carmen Richard, Shana Wright, and Sherry Cummisford (hereafter, the "Indirect Purchaser Plaintiffs" or "IPPs") hereby file this unopposed motion for attorneys' fees, costs, and service awards in connection with the preliminarily approved class action settlements with Defendants Shire U.S., Inc. and Shire, LLC ("Shire"), and with Defendants Actavis Elizabeth LLC, Actavis LLC (named as Actavis, Inc.), and Actavis Holdco U.S., Inc. ("Actavis").

## I. INTRODUCTION

After 4.5 years of hard-fought litigation, IPPs reached a settlement with Defendants Shire and Actavis in the amount of $2,950,000.00 which was preliminarily approved by this Court on August 11, 2021. Class Counsel now seek an award of attorneys' fees and costs, to be paid from the common fund.

Class counsels' litigation costs are over $1,066,177 in this case. Expert costs in the amount of $858,066 make up the bulk of these expenses. The remaining expenses include document management and data hosting fees, court reporting fees, filing fees and travel costs to attend hearings and depositions. Class notice and administration, which is to be paid from the Settlement Fund, separate from costs incurred by counsel, is estimated to be in the amount of $285,500.

Class Counsel seek attorneys' fees in the amount of 25% or $737,500. Awards as much as one-third fees are common in this District in similar generic suppression cases and have also been awarded by this Court in the companion Direct Purchaser litigation. *See* D.E. 551 (12/09/20). The requested fee is roughly a third (34%) of Counsels' reported lodestar of over $2,118,034 which meets and exceeds a lodestar cross-check, and is reasonable given the nature of the case, hours expended, risk undertaken and the beneficial results to the Class.

On behalf of Class Representative Plaintiffs, Tina Picone, Carmen Richard, Shana Wright and Sherry Cummisford counsel seek service awards in the amount of $5,000 each for the work they engaged in on behalf of the Class.

## II. BACKGROUND

This is an indirect purchaser antitrust case brought against Shire, the manufacturer of the brand-name prescription drug Intuniv, and Actavis, the "first filer" and manufacturer of the generic equivalent to Intuniv, guanfacine. The action was commenced in 2016 alleging that Shire and Actavis unlawfully entered into a reverse payment patent settlement that resulted in Shire's retaining brand exclusivity for additional months, while Actavis was assured Shire would not launch its own authorized generic during Actavis' 180-day period of exclusivity as the "first filer" of an abbreviated new drug application. IPPs alleged that, absent Defendants' collusive arrangement, generic guanfacine would have been available earlier, and at cheaper prices.

On October 20, 2017, the Court largely denied Defendants' motions to dismiss. The parties then engaged in exhaustive fact discovery, which included the production of over 700,000 pages of documents, approximately two dozen depositions including the depositions of each Class Representative, third-party discovery, and the exchange of many expert reports on antitrust economics, damages, market power, industry practices, prescription drug manufacture, patent matters, pharmaceutical distribution/supply chain and prescribing habits.

Class Counsel retained twelve experts to prepare expert reports and to testify at trial on behalf of IPPs, including health economists from Graylock McKinnon Associates as well as sharing preparation efforts and expenses of an additional eight experts shared with the Direct Purchasers Plaintiffs ("DPPs"). *See* Declaration of Conlee S. Whiteley, ("Whiteley Decl. ¶__") ¶ 24, note 12.

On August 21, 2019, the Court denied IPPs' motion for class certification. The First Circuit denied IPPs' petition for interlocutory appeal on September 10, 2020.

In September 2019, Shire and Actavis moved for summary judgment which Plaintiffs opposed. The parties also filed *Daubert* motions as to the many experts. In September and October 2020, the Court ruled on both parties' motions for summary judgment, and the parties' dueling *Daubert* motions, denying and granting some requested relief but not granting any party's request for summary judgment in full. The case was trial-ready at the time of Settlement.

Class Counsel negotiated a settlement with Actavis, and months later with Shire, filed the related Motions for Preliminary Approval and supporting documentation. Class notice was published pursuant to this Court's order D.E. 373. Class claims have been made and a full report on claims will be summarized in Plaintiffs' Motion for Final Approval of the Class Settlement.

## III. ARGUMENT

### A. Class Counsel's Attorneys' Fees and Litigation Costs Are Reasonable

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by the parties' agreement." Fed. R. Civ. P. 23(h). The award of attorney's fees and costs are to encourage the prosecution of private antitrust actions and to deter anticompetitive conduct. *See, e.g.*, *The Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This Court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972) (Rule 23 provides for class actions that may "enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture").

Attorneys who achieve a common fund for the benefit of a class are entitled to compensation in the form of fees and reimbursement of litigation expenses. As the First Circuit has stated: "The common fund doctrine is founded on the equitable principle that those who have profited from the litigation should share its costs." *In re Thirteen Appeals – San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995). Courts in this Circuit have employed the percentage of fund method to award attorneys' fees in class action cases, often with a lodestar cross-check. *See, e.g.*, *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007). The efforts of Class Counsel here have resulted in a common fund of $2,950,000, affording substantial compensation for indirect purchasers for their antitrust-related injuries.

**1. <u>Class Counsel's Litigation Costs Are Reasonable</u>**

Counsel who create a common fund for the benefit of a class are entitled to recovery of reasonable litigation expenses from the fund. *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). Expenses should be evaluated against the legitimate needs, size, and complexity of the case. *See, e.g.*, *In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 233-38 (1st Cir. 1997).

Here, Class Counsel have incurred over $1,066,000 in litigation expenses. *See* Whiteley Decl. ¶ 22. These expenses include expert fees, court filing fees, and document hosting platform fees,[1] as well as customary litigation expenses such as retention of court reporters, case-related travel, and the like. Class Counsel bore the cost of these expenses, and kept contemporaneous records of same, with no promise of return.

Class Counsel's litigation expenses are reasonable for a complicated, protracted litigation such as this one. The expenses sought are of the same kind routinely charged to fee-paying clients

[1] All costs here including the experts and platform fees sought here represent IPPs' exclusively-incurred amounts of any expenses shared with DPPs and do not include any costs borne by DPPs. Whiteley Decl. ¶ 24.

and incurred in other litigations of this type and are consistent with, and companion to, the DPP costs award approved by this Court. D.E. 551. The amounts of the expenses, including expert costs, are consistent with the number and complexity of legal issues that were in play in this matter. Thus, IPPs' request for reimbursement of litigation expenses should be approved.

### 2. <u>A Percentage of the Fund Is the Prevailing Method For Attorneys' Fees</u>

Courts in this Circuit and others routinely apply a percentage of fund methodology for calculation of attorneys' fees in class cases. *See, e.g.*, *Thirteen Appeals*, 56 F.3d at 307 ("[W]e hold that in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar."); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006) ("The POF method has emerged in the last decade-plus as the preferred method of awarding fees in common fund cases. As the First Circuit has noted, the POF method has distinct advantages over the lodestar approach."); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (using the percentage of the fund method); *In re Asacol Antitrust Litig.*, No. 15-cv-12730, 2017 WL 11475275, at *4 (D. Mass Dec. 7, 2017) (same); Order at 7-8, *In re Prograf Antitrust Litig.*, No. 11-md-2242 (D. Mass. May 20, 2015), ECF No. 678 (same). The percentage of fund methodology "aligns the interests of the class with the interests of class counsel." *Bussie v. Allmerica Fin. Corp.*, No. 97-cv-40204, 1999 WL 342042, at *2 (D. Mass. May 19, 1999) (internal quotations and citation omitted).

### 3. <u>A Percentage of the Fund of Twenty-Five Percent Is Reasonable</u>

A twenty-five percent fee is very reasonable in this case. For one, IPPs' settlements with Defendants each provide that IPPs may seek up to a one-third fee. Shire Agreement ¶12; Actavis Agreement ¶12. Second, a twenty-five percent fee is less than the one-third fee this Court awarded

the Direct Purchasers in their settlement with Actavis. *See* D.E. 551. Third, other courts in this District consistently award greater fees of one-third in antitrust pay-for-delay cases such as this one. *See, e.g.*, *In re Loestrin Antitrust Litig.*, No. 13-md-2472, 2020 WL 5203323 (D.R.I. Sept. 1, 2020); *In re Solodyn Antitrust Litig*., 2018 WL 7075881; *In re Asacol Antitrust Litig*., 2017 WL 11475275; *In re Prograf Antitrust Litig.*, No. 11-md-2242, ECF No. 678; *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 80, 82 (D. Mass. 2005). These courts and others in this District apply a number of non-exhaustive factors to weigh the reasonableness of a requested fee, including: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *see also Gunther v. Ridgewood Energy Corp.*, 209 F.3d 43 (3d Cir. 2000). These same factors militate in favor of IPPs' requested twenty-five percent fee here.

First, the settlements represent a substantial recovery for the class. Under the class settlements each participating Class Member receives a direct and immediate recovery for the alleged overpayments they experienced for brand and generic Intuniv. The fund will benefit the entire class–indirect purchasers of Shire's branded Intuniv or Actavis' generic equivalent.

Second, to date, no one has filed an objection to the settlements, including its provision of attorneys' fees and litigation expenses. This suggests the settlements have been well-received by the classes.

Third, the complexity of this litigation supports the requested fee. This case involved numerous complicated legal and factual issues, implicating disciplines including healthcare

finance and economics, prescription drug manufacturing, patent and regulatory issues, antitrust economics, and mental healthcare treatment. The legal issues were made all the more complicated here as multiple states' laws came into play. Further, Defendants were represented by very able counsel. As this Court knows from years of overseeing the litigation, this matter was far from straightforward.

Fourth, Class Counsel devoted a substantial amount of time to this matter (the sixth factor), and they employed commensurate experience, skill and efficiency (the third factor). As reflected in the declarations of Class Counsel submitted herewith, they collectively devoted over 6000 hours to this matter, which involved many depositions on both sides and substantial paper and expert discovery. Class Counsel aimed to ensure that each task was appropriately staffed with counsel with commensurate experience to ensure efficiency. Simply put, this matter demanded substantial attention to complicated issues, which Class Counsel approached with efficiency and zeal.

Fifth, the risks of litigation support the requested fee. Class Counsel undertook this litigation on a contingency fee basis, and bore all risk for the litigation expenses incurred. Antitrust-related matters carry great litigation risk, as evidenced by mixed results in similar pay-for-day matters in more recent years. *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34 (1st Cir. 2016) (affirming verdict and entry of judgment for defendants); *In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734 (E.D. Pa. 2015) (granting summary judgment for defendants). Any recovery for Class Members in this matter was even farther from certain after the Court declined to certify a litigation class. Additionally, Class Counsel undertook the added risk of pursuing a conspiracy claim that necessarily turned on non-public information in Defendants' possession. The certain recovery Class Counsel have obtained for Class Members shows the reasonableness of the requested fee.

Sixth and finally, the requested fee is reasonable compared to awards in similar cases. As noted above, courts in this District and others routinely approve one-third fee requests in pay-for-delay cases, whereas IPPs here seek only a twenty-five percent fee award.

#### 4. A Lodestar Cross-Check Underscores the Reasonableness of a Twenty-Five Percent Fee

A lodestar cross-check is not required in the First Circuit. *See In re Puerto Rico Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 464 (D.P.R. 2011). However, courts in this Circuit sometimes use a lodestar cross-check as a pragmatic tool to test the reasonableness of a percentage of the fund fee award. *See, e.g.*, *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05-cv-11148, 2009 WL 3418628, at *1 (D. Mass. Oct. 20, 2009). A lodestar cross-check here confirms the reasonableness of the requested twenty-five percent fee. Whiteley Decl. ¶¶ 26-32. As set forth in the accompanying declarations of Class Counsel, each of them incurred significant hours in the pursuit of this matter. Using their customary hourly rates for their services on a contingent basis in similar cases, the reported total lodestar for Class Counsel through October 31, 2021 is over $2,118,000.[2] The requested fee of $737,500, representing twenty-five percent of the settlement funds, results in a "negative" multiplier of approximately .34. This negative multiplier confirms that IPPs' fee request is "more than reasonable." *In re Solodyn*, 2018 WL 7075881, at *2 (holding that a negative multiplier of 0.82 was "a more than reasonable number given the difficult circumstances of this case, the time and resources invested, the experience and skill of Class Counsel, and the result achieved for the Class.").

[2] Class Counsel will incur further fees, and modest additional costs, in filing the remaining briefs associated with IPPs' Motion for Final Approval and overseeing the administration of the claims process and distribution. Whiteley Decl ¶ 21.

### 5. Class Representatives' Service Awards

Service awards for named plaintiffs "serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass. 2015). IPPs here each put substantial amounts of time in this case. They worked extensively with Class Counsel, provided many documents and information (including very sensitive mental health records and information pursuant to court order), and each of them sat for deposition. Given all of this, IPPs seek services awards in the amount of $5,000 each. This amount is consistent with the amounts awarded in similar cases in which the plaintiffs undertook a commensurate level of involvement and effort in the litigation and well within the range of awards approved by other courts in this District. *See, e.g.*, *In re Celexa & Lexapro Marketing & Sales Pracs. Litig.*, MDL No. 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) (approving $10,000 service awards); *In re Lupron Marketing & Sales Pracs. Litig.*, 228 F.R.D. 75, 98 (D. Mass. 2005) (approving $5,000 awards). Accordingly, the service awards of $5,000 each should be approved.

## IV. CONCLUSION

Class Counsel worked diligently over 4.5 years on behalf of the Class at substantial risk and with no guarantee of compensation while securing significant payments to Class Members. For this reason, the Indirect Purchaser Plaintiffs and Class Counsel respectfully request that the Court approve the requested attorneys' fees in the amount of $737,500 and costs in the amount of $1,066,177.45, and service awards to each plaintiff in the amount of $5,000 each.

**Dated:** November 8, 2021

Respectfully submitted,

/s/ *Conlee S. Whiteley*

Allan Kanner, Esq. (*pro hac vice*)
Conlee S. Whiteley, Esq. (*pro hac vice*)
David J. Stanoch, Esq. (*pro hac vice*)
Layne Hilton, Esq. (*pro hac vice*)
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
Email: a.kanner@kanner-law.com
c.whiteley@kanner-law.com
d.stanoch@kanner-law.com
l.hilton@kanner-law.com

Ruben Honik, Esq. (*pro hac vice)*
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
Email: ruben@honiklaw.com

Stephen Galebach, Esq.
**GALEBACH LAW OFFICE**
9-11 Touro Avenue
Medford, MA 02155
Phone: (617) 429-1966
Email: stephen.galebach@gmail.com

*Attorneys for IPP Plaintiffs*

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I, David J. Stanoch, hereby certify that this document filed through CM/ECF system on this date of November 8, 2021, was filed and served upon all counsel of record via the court's CM/ECF system.

*/s/ David J. Stanoch*
David J. Stanoch